# Haskins, Receiver, *v.* Anderson (et al.), Appellant.

*Principal and agent—Agent to purchase—Evidence—Duty to inquire as to agent's powers—Overdrafts—Ratification—Banks and banking.*

1. One dealing with an agent must exercise reasonable prudence.

2. Where an agency is limited to a particular purpose, and defined by the agent himself, and there is no evidence of ratification by his principals of anything that the agent did beyond purchasing for their account, the principals will not be liable for any act of the agent in excess of his powers.

3. Where an agent for purchasing, deposits moneys entrusted to him by his principal in an account in his own name as "agent" and thereafter deposits in such account drafts on his principal and on other persons, which the bank permits him to check against as cash, and such drafts are subsequently dishonored, the bank cannot recover from the agent's principal the loss sustained, in the absence of proof of ratification of the agent's acts.

4. In such case the fact that the agent drew drafts on his principal and deposited them in the account, is not notice to the principal of the deposit of drafts of other parties.

Argued October 7, 1925. Appeal, No. 156, March T., 1925, by T. A. Anderson, from judgment of C. P. Allegheny Co., Jan. T., 1924, No. 2206, on verdict for plaintiff, in case of Earl W. Haskins, receiver of First National Bank v. T. A. Anderson, impleaded with C. A. Johnston et al., trading as Anderson, Johnston & Branch. Before MOSCHZISKER, C. J., WALLING, SIMPSON, SADLER and SCHAFFER, JJ. Reversed.

Assumpsit for overdraft in bank account.    Before
EVANS, J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff for $9,800.55.    Defendant T. A. Anderson appealed.

*Error assigned* was, inter alia, refusal of judgment
for defendant n. o. v., quoting record.

*John M. Reed,* of *Reed & Blair,* for appellant.—The
declarations of Mr. Coggins at the time of the opening
of the bank account were not competent to prove his
agency: Kroll v. Phila., 240 Pa. 131.

A party who avails himself of the act of an agent,
must, in order to charge the principal, prove the authority under which the agent acted: American Car Foundry v. Water Co., 221 Pa. 529; Slease v. Naysmith, 14 Pa.
Superior Ct. 134; Flood v. B. & L. Assn., 84 Pa. Superior Ct. 210.

*Harvey A. Miller,* of *Miller & Nesbitt,* for appellee.—
When the account was opened on August 21, 1921, by
the check or draft of defendants, and deposited in plaintiff bank by the agent and representative of defendant as
their agent, the bank had the right to treat the fund as
belonging to the principal: Bank of Northern Liberties
v. Jones & Cole, 42 Pa. 536.

OPINION BY MR. JUSTICE SCHAFFER, November 23,
1925:

The receiver of the First National Bank of Rocky
Ford, Colorado, prosecutes this suit to recover from the
firm of Anderson, Johnston & Branch the amount of an
overdraft in the account of an alleged agent of that firm.
T. A. Anderson was the only defendant served with
process and the case proceeded to trial against him, resulting in a verdict and judgment for plaintiff, from
which Anderson appeals.

The case both on oral argument and in the printed briefs has been discussed on broader lines than we think it merits, as in our view the issue was a very narrow one. It is: Did Coggins, the agent, exceed the authority conferred, either express or implied, which was given him by his principals, Anderson, Johnston & Branch? While there is a discussion in the briefs on the general subject of agency and how it may be shown, we think it is not necessary to meet this controversy, because as we read the record there is no question that Coggins was the agent of the firm. The critical inquiry is just what his agency amounted to and what authority and powers it carried with it.

Anderson, Johnston & Branch were produce dealers in Pittsburgh. They sent Coggins to Rocky Ford as their agent to purchase for and ship to them cantaloupes. They gave him a check for $2,000, which apparently was his initial capital for the purpose of making the purchases. He deposited this check on August 16, 1921, in the First National Bank of Rocky Ford, and thereafter during that year, the year following and in 1923, when the events transpired which gave rise to this action, deposited in the account certain drafts. During 1921 and 1922, these drafts were all drawn on his principals, Anderson, Johnston & Branch, but in 1923, he drew drafts not alone upon them but upon other persons for whom he was purchasing cantaloupes. The account was opened "C. A. Coggins, Agent," and continued under this designation. When the drafts were deposited by Coggins, the bank, instead of waiting until it had received advices that a draft had been accepted by Anderson, Johnston & Branch, treated the drafts as cash items and permitted Coggins to draw against them. In 1923 he drew a draft on Rice & Smith, who were also produce dealers in Pittsburgh, for $6,000. This draft was honored and paid. Subsequently he drew other drafts on Rice & Smith which, however, were dishonored, as were three drafts on Anderson, Johnston & Branch for $1,-

533.75.   The total of the dishonored drafts amounted to $8,950.30.   Immediately after these drafts were deposited in the bank, Coggins, treating them as cash as had been his custom, checked their proceeds out.   When they were dishonored, the bank called upon Anderson, Johnston & Branch to make good the amount of Coggins's overdraft and, on their refusal so to do, this suit was instituted.   On the trial of the case, it appeared that not only did the drafts drawn by Coggins go to make up the bank account but in addition he deposited therein other money, including checks for salary paid him by his principals, and out of the account he checked sums, not only in payment for the cantaloupes which he had purchased, but to his wife and for his own expenditures.

It is the contention of appellee that there was sufficient evidence to submit to the jury to show that Coggins had authority from Anderson, Johnston & Branch to open a bank account for them, and, as we understand the position of appellee, adequate proof to show that they were chargeable with whatever he did in connection with this bank account as though they themselves had done it.   Taken from appellee's own counter history of the case the facts upon which reliance is placed to sustain this position are these: That Coggins when he opened the bank account in 1921 presented a card with the name of the firm on it "Anderson, Johnston & Branch, Fruit and Produce, Pittsburgh, Pennsylvania" and his own name thereon "C. A. Coggins, Representative," that he carried the account "C. A. Coggins, Agt., Anderson, Johnston & Branch" (which we do not find substantiated by the evidence), that the course of business from the beginning of the account had been for the bank to treat the drafts deposited as cash (parenthetically it may be again observed that there is no evidence on the record that Anderson, Johnston & Branch knew that they were being treated as cash), that when Coggins returned to Pittsburgh at the close of the canta-

loupe season of 1921, the bank received a letter signed "Anderson, Johnston & Branch" thanking it for the many courtesies extended to Coggins (Coggins testified, however, that he dictated this letter, but could not say who signed it) ; that the same method of drawing drafts and checks against them was pursued in the years 1922 and 1923. We fail to see how these facts fix the defendant with liability for the overdrafts, particularly those resulting from the dishonoring of the drafts drawn by Coggins on Rice & Smith. In no way are Anderson, Johnston & Branch connected with these drafts, which represented the price paid by Coggins for cantaloupes purchased by him for the account of Rice & Smith. The only piece of evidence in the case bearing on Anderson, Johnston & Branch, so far as these drafts are concerned, is the fact that, in a telegram which Coggins sent to Rice & Smith notifying them of purchases of cantaloupes which he could make for their account, he told them to show the telegram to Anderson. It is not even alleged that Anderson, Johnston & Branch had anything to do with these cantaloupes, that they were bought for their account or that they received any of them; furthermore, the record would seem to indicate that during the year 1923 it was understood by Anderson, Johnston & Branch that Coggins was not acting exclusively for them. In addition to this, Smith, one of the partners of Rice & Smith, testified that in the year 1923 Coggins purchased cantaloupes for them, that they dealt with him personally in regard to the transactions, that Anderson, Johnston & Branch were in no way connected with the purchases, and that they (Rice & Smith) did not pay for all the cantaloupes that Coggins had bought for them because the purchases had been made on a basis which had not been authorized, that there were outstanding differences between them and Coggins which had not been adjusted at the time of trial.

The trial judge in the course of his charge stated to the jury that there was no testimony in the case which

directly shows that the arrangement which Coggins made with the bank that he might deposit the drafts as cash was conveyed to Anderson, Johnston & Branch. Our examination of the record convinces us that there was no such information conveyed to them, either directly or indirectly. Anderson testified that the extent of Coggins's agency at any time was to purchase cantaloupes for them (that he did not have even that authority in 1923), that they did not authorize him to open a bank account in behalf of the firm, that he did not have any knowledge of the existence of the bank account, that they did not authorize Coggins to obtain credit on their behalf and that they did not authorize him to draw drafts upon Rice & Smith or upon any other person. Coggins himself testified that he went to Rocky Ford as the representative of Anderson, Johnston & Branch to buy cantaloupes. He did not say that they authorized him to open a bank account for them.

Before establishing a course of dealings with Coggins which enabled him to check against the unaccepted drafts, it would have been an easy thing for the bank to have written his principals and obtained their approval of this course, but the bank did not do so. One dealing with an agent must exercise reasonable prudence: Meechem on Agency (2nd ed., 1914), vol. 1, sec. 752. Here we have a case in which the bank, dealing with the agent, made no inquiry of his principal at all. This, under the circumstances, was not acting with ordinary prudence.

Boiled down to its essentials, we have the situation of a bank, located in Colorado, being permitted to recover from merchants in Pittsburgh the amount of overdrafts made by an agent without any showing that the authority of the agent extended beyond that of a mere purchaser for his principals' account. More would have to be shown than this record discloses to make his principal liable for the agent's diversion of funds from the bank. Cases such as Buchholtz v. Barrie, 36 Pa. Su-

perior Ct. 454, cited as authority for the principle that, where an agency is denied, but the alleged agent swears that he is in fact an agent, and his testimony is corroborated by a course of dealing with the alleged principal, indicating an agency, and there is evidence of ratification by the alleged principal of the acts of the alleged agent, the question of agency is for the jury, have no application to this controversy, for the reason that the agency was limited and defined by the agent himself and there is no evidence of any ratification by his principals of anything that he did beyond purchasing for their account.

There being no evidence in the case which shows any act or conduct on behalf of the defendant which made him liable for the amount of overdrafts, the court below was in error in permitting a recovery to be had against him.

The fifth assignment of error raising the question of the court's refusal to enter judgment for the defendant non obstante veredicto is sustained.

The judgment is reversed and here entered for defendant.